UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AZAD ZADEH and YAVAR YARAHMADI, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 23-cv-3721<br>) |
| v. | ) Hon. Steven C. Seeger<br>) |
| ANTONY J. BLINKEN, RENA BITTER, and JONATHAN WEBSTER, | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Azad Zadeh, a United States citizen, lives in Illinois. In 2021, she met Yavar Yarahmadi, an Iranian national, in Iran. Love quickly blossomed, and a month later, they got engaged.

Yarahmadi lives in Iran. But he wants to move to the U.S. to join Zadeh. Zadeh and Yarahmadi began planning for married life in the U.S. The couple also began the process of obtaining a K-1 fiancé visa for Yarahmadi.

Yarahmadi sat for an interview at the U.S. Embassy in Abu Dhabi in February 2023, roughly 15 months ago. But he hasn't received a final adjudication on his visa application. In the meantime, Zadeh and Yarahmadi felt frustrated with the passage of time.

Like countless people around the globe, Yarahmadi wants to come to the United States. He wants an invitation to live here. And he wants the United States government to make a decision on his application, sooner rather than later. He believes that the federal government is taking too long to make up its mind.

Zadeh and Yarahmadi filed this lawsuit in June 2023, only five months after the interview. They sued the United States to force the federal government to hurry up and decide whether to invite Yarahmadi to the United States. They wants a decision about an invitation, faster. They want to jump the line ahead of other applicants, too.

They ask this Court to force the hand of the Executive Branch, and compel Uncle Sam to give a thumb's up or a thumb's down to the application. They brought a mandamus claim and claims under the Administrative Procedure Act.

Zadeh and Yarahmadi sued three federal officials in their official capacities: Secretary of State Antony J. Blinken, Assistant Secretary for Consular Affairs of the Department of State

Rena Bitter, and Consul General of the U.S. Embassy in Abu Dhabi Jonathan Webster. Defendants, in turn, moved to dismiss.

For the following reasons, Defendants' motion to dismiss is granted.

## Background

This case is about a K-1 fiancé visa application. *See* Cplt., at ¶ 1 (Dckt. No. 1).

Plaintiff Azad Zadeh, a U.S. citizen, is seeking a K-1 fiancé visa for her fiancé, Plaintiff Yavar Yarahmadi. *Id.* at ¶ 2.

A K-1 visa is a temporary nonimmigrant visa. *Id.* at ¶ 37. It is valid for a limited time, only. *Id.* But at its core, a K-1 visa is like a spousal visa. *Id.* It offers a path for permanent immigration to the U.S. *Id.* at ¶ 38. It is processed like an immigrant visa, too. *Id.* at ¶ 37. It is viewed as an immigrant or "quasi-immigrant" visa. *Id.* at ¶ 38.

Zadeh is a U.S. citizen and wants Yarahmadi, her fiancé, to join her here. Yarahmadi is a national of Iran. *Id.* at ¶ 80. Zadeh lives in Illinois and works as a cardiovascular sonographer.[1] *Id.* at ¶ 79. She has been a U.S. citizen since 2013. *Id.* at ¶ 78.

Zadeh and Yarahmadi met in 2021, when Zadeh was visiting family and friends in Iran. *Id.* at ¶ 81. A month after they met, they became engaged. *Id.* The couple made plans for Yarahmadi to join Zadeh in the United States so that they could begin their life together. *Id.* at ¶ 82.

After the engagement, Zadeh filed a Form I-129F petition on Yarahmadi's behalf. *Id.* at ¶ 84. A Form I-129F is step one toward obtaining a K-1 fiancé visa. When filing a Form I-129F petition, a petitioner must show that both parties are free to marry and plan to do so within 90 days of the foreign national's admission to the U.S. on a K-1 visa. *Id.* at ¶ 39. Generally, the couple must have met in person during the two years before they filed the petition. *Id.*

After receiving a Form I-129F, U.S. Citizenship and Immigration Services verifies that the petitioner and the beneficiary have a qualifying relationship and that they intend to marry within 90 days of the beneficiary moving to the U.S. *Id.* at ¶ 41.

In August 2022, USCIS approved the I-129F petition that Zadeh filed for Yarahmadi. *Id.* at ¶ 87. But, again, the I-129F is only step one in the process of getting a visa. After approval of the I-129F, the petition is sent to the National Visa Center, and then to the Embassy. *Id.* at ¶ 44. At the Embassy, the foreign fiancé will apply for a K-1 visa and any qualifying dependents can file for a K-2 visa. *Id.*

---

[1] "Cardiovascular sonographers . . . use cutting edge ultrasound technology to create images of the human heart. Physicians then use these images to detect defects, medical conditions, and diseases." *11 Things to Know Before Becoming a Cardiac Sonographer*, AIMS Education (Dec. 18, 2019), https://aimseducation.edu/blog/11-things-to-know-before-becoming-a-cardiac-sonographer.

The fiancé can then begin the formal visa application process by filing the DS-160 Online Nonimmigrant Visa Application. *Id.* After the fiancé fills out the DS-160, files supporting documentation, completes a medical exam, and pays the applicable fees, the visa application will be sent to the applicable U.S. embassy or consulate. *Id.* at ¶ 45.

In November 2022, Zadeh and Yarahmadi received notice that "National Visa Center (NVC) received [the] fiancé (e)'s/spouse's approved I-129F petition from U.S. Citizenship and Immigration Services (USCIS) [and that the] NVC [would] now forward the petition to the U.S. Embassy or Consulate in Abu Dhabi, United Arab Emirates." *Id.* at ¶ 89.

Zadeh and Yarahmadi immediately paid the applicable processing fees and timely submitted the DS-160 application, along with supporting documentation. *Id.* at ¶ 91. They began prepping for their anticipated interview. *Id.*

Yarahmadi's interview took place in February 2023, at the U.S. Embassy in Abu Dhabi. *Id.* at ¶ 92. After the interview, he was informed that his application "would have to undergo mandatory administrative processing." *Id.* at ¶ 93.

The consular officer gave Yarahmadi a temporary refusal letter under section 221(g) of the U.S. Immigration and Nationality Act, 8 U.S.C. § 1201(g). *Id.* The letter stated that the "visa application was temporarily refused under section 221(g)." *Id.*

But the Embassy did not slam the door shut. The letter left it open, at least a crack. "[T]his refusal may be overcome once the missing documentation and/or administrative processing is completed," and "you will be contacted by the Embassy once the processing is complete." *Id.*

Along with the temporary refusal letter, the Embassy sent Yarahmadi a Form DS-5535. *Id.* at ¶ 94. That form includes supplemental questions for visa applicants. *Id.* It requested that Yarahmadi send 15 years of detailed history including his addresses, employment, travel, and social media handles. *Id.* He promptly completed the form and submitted a detailed response to the questionnaire. *Id.*

The State Department website shows that Yarahmadi's visa application case is "Refused." *Id.* at ¶ 97. The website says that his case was "refused for administrative processing, [that his] case will remain refused while undergoing such processing [and] will receive another adjudication once such processing is complete […] you will be contacted if additional information is needed." *Id.*

Zadeh and Yarahmadi have inquired about his visa status on their own and through congressional representatives. *Id.* at ¶ 98. The only response that they have received is that the "case is still pending administrative processing," that the government is "unable to predict the length of time required for the completion of the required administrative processing," and that "no additional documents are needed at this time." *Id.*

Zadeh and Yarahmadi haven't received a request for additional documents, and Yarahmadi's online case status has not changed. *Id.* at ¶ 99; *see also id.* at ¶ 122. In the couple's view, the government has relegated Yarahmadi's application to "an indefinite state of administrative processing." *Id.* at ¶ 125.

Frustrated by perceived delays in the visa process, Zadeh and Yarahmadi went to the federal courthouse and filed a complaint. Zadeh and Yarahmadi sued three government officials in their official capacity. *Id.* at ¶¶ 29–31. They sued Secretary of State Antony J. Blinken, Assistant Secretary for Consular Affairs of the Department of State Rena Bitter, and Consul General of the U.S. Embassy in Abu Dhabi Jonathan Webster. *Id.*

They were quick on the draw in complaining about the government being slow on the draw. They filed a complaint on June 13, 2023, only four months after the interview in February 2023.

The complaint includes four counts.

Count I is a mandamus claim under 28 U.S.C. § 1361. *Id.* at ¶¶ 130–48. It alleges that Defendants have unreasonably delayed adjudication of Yarahmadi's visa application. *Id.*

Counts II, III, and IV assert that Defendants violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq. See id.* at ¶¶ 149–92. Count II alleges "unlawful withholding and unreasonable delay" in adjudicating Yarahmadi's visa application, in violation of 5 U.S.C. § 706(2). *Id.* at ¶ 157. Counts III and IV request that the Court compel Defendants to act on Yarahmadi's application, under 5 U.S.C. § 706(1). *Id.* at ¶¶ 165–92.

Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mtn. to Dismiss (Dckt. No. 13). They contend that the case is moot because the consular office already rejected Yarahmadi's visa application in May 2023. *See* Defs.' Mem. in Support of Mtn. to Dismiss, at 7 (Dckt. No. 14). *Id.* at 11. They also believe that the doctrine of consular nonreviewability applies. Alternatively, Defendants argue that Zadeh and Yarahmadi's claims fail on the merits. *Id.* at 13–15.

## Legal Standard

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. Courts "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in plaintiff's favor, unless standing is challenged as a factual matter." *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 624 (7th Cir. 2017) (quoting *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015)).

But if standing is challenged as a factual matter, the challenge shifts from a facial one – where the Court looks only to the Complaint and takes all reasonable inferences in plaintiff's favor – to a factual one. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When the challenge is factual, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the

issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

**I.      Subject Matter Jurisdiction**

Defendants challenge this Court's subject matter jurisdiction, so the Court must begin there. *See Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019) ("Subject-matter jurisdiction is the first issue in any case[.]"); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Subject matter jurisdiction always comes first.

Defendants contend that the case is moot. *See* Defs.' Mem., at 7 (Dckt. No. 14). "Mootness is a constitutional doctrine designed to avoid the issuance of advisory opinions. A suit becomes moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021) (cleaned up). "Federal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011).

Defendants believe that the case is moot because "the consular officer made a decision and refused Mr. Yarahmadi's visa application on February 2, 2023." *See* Defs.' Mem., at 7 (Dckt. No. 14). Zadeh and Yarahmadi disagree. *See* Pls.' Resp. to Mtn. to Dismiss, at 9 (Dckt. No. 17). They believe that Yarahmadi's application is still pending review after the section 221(g) refusal.

Plaintiffs get it right.

The document refusing Yarahmadi's application under section 221(g) does not use the language of finality. In fact, it makes clear that the window of opportunity is not yet closed.

"Your visa application is refused under section 221(g) of the U.S. Immigration and Nationality Act for the reasons stated below. However, this refusal may be overcome once the missing documentation is submitted and/or administrative processing is completed." *See* Pls.' Ex. D (Dckt. No. 1-4).

Underneath that language, the document shows that an official from the consular office wrote a red "X" in a box titled "Administrative Processing." *Id.* Inside the Administrative Processing box, printed language reads: "This process can sometimes take several months. You will be contacted once the processing is complete." *Id.*

When Yarahmadi logs onto the State Department website, he is greeted by language about the refusal of his visa application. *See* Ex. E (Dckt. No. 1-5). That language addresses applicants like Yarahmadi, whose applications were refused for administrative processing. *Id.* "If you were informed by the consular office that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete." *Id.*

In other words, Yarahmadi's visa application process hasn't ended. Processing is not complete. He is waiting for administrative processing to conclude, but he hasn't received a final decision yet.

In Defendants' view, any additional "Administrative Processing" is a reconsideration of the denial of Yarahmadi's application. *See* Defs.' Mem., at 8–9 (Dckt. No. 14). Not so.

Courts have held that administrative processing precedes a forthcoming final decision. *See, e.g.*, *Gonzalez v. Baran*, 2022 WL 1843148, at *3 (C.D. Cal. 2022) ("[A]t a minimum, the genuine dispute of fact regarding whether the visa application has been adjudicated to a final refusal precludes granting defendants' motion to dismiss."); *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016) (explaining that "'administrative processing' precedes – and does not equate to – a final determination"); *Billoo v. Baran*, 2022 WL 1841611, at *4 (C.D. Cal. 2022) (declining to conclude that a case was moot when the visa application remained in administrative processing).

Administrative processing is part of the initial visa application process – not a reconsideration of a denial. In other words, administrative processing is another inning in the visa application ballgame. It might be extra innings, but it's still the same game. And the game is not yet over.

Therefore, the Court concludes that the claims are not moot.[2]

---

[2] As an aside, because mootness is a jurisdictional issue, it can be raised at any point in the proceedings. *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) ("[I]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings.") (quoting *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010) (cleaned up). A case can present a live controversy for now but become moot later. So, if a final adjudication of Yarahmadi's visa application happened at a later stage of the litigation, the lawsuit could become moot.

## II. Consular Nonreviewability

Defendants believe that the doctrine of consular nonreviewability renders this case nonjusticiable. *See* Defs.' Mem., at 9 (Dckt. No. 14).

"Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019) (Barrett, J.).

"The doctrine of consular nonreviewability stems from these separation-of-powers principles. It instructs that ordinarily, visa decisions made by consular officers abroad are not subject to judicial review." *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024). "All [a court] can do is to look at the face of the decision, see if the officer cited a proper ground under the statute, and ensure that no other applicable constitutional limitations are violated. Once that is done, if the undisputed record includes facts that would support that ground, [the court's] task is over." *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017).

However, "while the doctrine of consular nonreviewability precludes review of final visa application *decisions*, it does not insulate a delay in reaching those decisions from judicial review." *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020) (emphasis in original); *see also Jaraba v. Blinken*, 568 F. Supp. 3d 720, 731 (W.D. Tex. 2021) (declining to apply the doctrine of consular nonreviewability in a case about whether a decision on a visa application was unreasonably delayed); *Abdur-Rahman v. Napolitano*, 814 F. Supp. 2d 1087, 1095 (W.D. Wash. 2010) (opining that "a district court has jurisdiction to consider a petition to compel the consular official to take action he has withheld"); *Pourabdollah v. Blinken*, 2024 WL 474523, at *5 (D.D.C. 2024) (collecting cases).

Zadeh and Yarahmadi argue that the doctrine of consular nonreviewability does not come into play here. *See* Pls.' Resp., at 12–13 (Dckt. No. 17). In their view, they're challenging the delay in reviewing the application, not a final decision to grant or deny it. *Id.* The Court agrees.

As this Court explained in its discussion of mootness, the consular officer has not yet reached a final decision on Yarahmadi's visa application. The issue here is *delay*, not *denial*. And a plaintiff can challenge a delay without running into the bar of consular nonreviewability.

Therefore, the doctrine of consular nonreviewability does not apply. The Court declines to dismiss the complaint on this ground.[3] Onto the merits.

## III. Mandamus (Count I)

The first claim is a claim under the Mandamus Act, 28 U.S.C. § 1361. *See* Cplt., at ¶¶ 130–48 (Dckt. No. 1). Plaintiffs want this Court to force the Executive Branch to make a decision.

---

[3] If Yarahmadi later receives a final decision refusing his visa application, the doctrine of consular nonreviewability could apply.

7

Section 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361.

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up). "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)).

A writ of mandamus is a blunt object, designed for the exercise of brute judicial force. If a writ of mandamus had a warning label, it would say "Handle with Caution."

"A writ of mandamus is an exercise of force, so courts must tread lightly. The need for caution is especially great where, as here, the underlying action is entrusted to a co-equal branch of government, and the legislative branch has vested the executive branch with discretion. Courts must stay in their lane, and forcibly intervene only when it is clear that the agency has gone off the rails." *Aljabari v. Mayorkas*, 2022 WL 2073047, at *2 (N.D. Ill. 2022).

In Defendants' view, this Court should dismiss Count I because "as a matter of law, there is nothing to indicate that the defendants have any statutory requirement, let alone a mandatory timeframe for a re-adjudication of Mr. Yarahmadi's visa application." *See* Defs.' Reply, at 7 (Dckt. No. 18).

Plaintiffs argue that dismissal is inappropriate at this stage of the litigation because determining whether the delay is unreasonable is a fact-intensive analysis. *See* Pls.' Resp., at 14 (Dckt. No. 17). Not so.

Courts have granted motions to dismiss in similar circumstances. A plaintiff must come forward with more than a run-of-the-mill passage of time, and a desire for things to go faster, to justify a writ of mandamus. After all, a writ of mandamus would move a plaintiff to the front of the line, and hopping the line imposes costs on other applicants. *See, e.g.*, *Calderon-Ramirez*, 877 F.3d at 274 (affirming district court's decision to grant a motion to dismiss a petition for a writ of mandamus to compel adjudication of a visa application); *Ruiz v. Wolf*, 2020 WL 6701100, at *5 (N.D. Ill. 2020) (granting the defendants' motion to dismiss a writ of mandamus for adjudication of a visa application because the plaintiff failed to allege why she should skip ahead of other applicants).

Plaintiffs think that Congress has prescribed a shorter timetable for adjudicating visa applications. *See* Cplt., at ¶ 142 (Dckt. No. 1) (citing 8 U.S.C. § 1571). They point to section 1571's language that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571.

8

However, courts have concluded that this statutory provision does not apply to the State Department. *See, e.g.*, *Orozco v. Blinken*, 2023 WL 4595377, at *4 (N.D. Ill. 2023) ("Section 1571's applicability to this case . . . is questionable given that it applies to the processing of immigrant benefit applications by USCIS, not the State Department."); *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (collecting cases). Processing an application is the business of the USCIS. But here, Plaintiffs aren't waiting on the USCIS. They're waiting on the State Department.

Even if section 1571 did apply to the State Department, "its timeline is aspirational rather than binding." *See Orozco*, 2023 WL 4595377, at *4; *see also Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021) (McFadden, J.) ("This language is best interpreted as nonbinding.") (cleaned up).

Notice the tentative statutory language. "It is the *sense* of Congress" that an application "should be" processed no later than 180 days from filing. *See* 8 U.S.C. § 1571 (emphasis added).

Section 1571 communicates an aspiration, not an obligation. It is closer to a New Year's resolution than a binding directive. The statute says "should," not "must," and "should" is a lot different than "must." Congress is all-too-familiar with how to create a hard-and-fast rule and impose fixed deadlines. But in section 1571, Congress simply shared the "sense" of Capitol Hill.

Without a "congressionally supplied yardstick, courts typically turn to case law as guide." *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. 2020). "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. 2019); *see also Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *8 (D.D.C. 2020) (explaining that courts "have declined to find a two-year period to be unreasonable as a matter of law"); *Orozco*, 2023 WL 4595377, at *6.

Here, Yarahmadi had his interview in February 2023. *See* Cplt., at ¶ 3 (Dckt. No. 1). Since then, his application has remained in administrative processing. *Id.* at ¶ 4. That's a wait time of 15 months, give or take. *See Jahangiri v. U.S. Dep't of State*, 2023 WL 5174305, at *3 (D.D.C. 2023) (measuring the wait time from the interview onward).

Yarahmadi has been waiting for a year and some change. It's hard to wait. Even so, that's not the sort of wait that could give rise to a writ of mandamus.

According to the complaint, Zadeh and Yarahmadi want to begin a family. *See* Cplt., at ¶ 108 (Dckt. No. 1). Being thousands of miles apart has taken an emotional toll. *Id.* at ¶ 109. Zadeh can't spend much time in Iran because of her professional obligations. *Id.* at ¶¶ 113–14. Plus, Zadeh and Yarahmadi have incurred significant costs between travel expenses, visa application fees, and maintaining two households. *Id.* at ¶¶ 117–19.

Keeping up a relationship over FaceTime, from 6,000 miles apart, is undoubtedly hard. A 10-hour time difference is tricky to navigate. Planning a life together amid uncertainty isn't easy, either.

9

Still, a court needs an out-of-the-ordinary reason to grant the extraordinary relief of mandamus. Zadeh and Yarahmadi have failed to demonstrate how their situation differs from others waiting for K-1 visas. Everyone else in the K-1 line wants a decision, too.

Plaintiffs may want the government to hop to it and move faster. And from their perspective, it is understandable why they want a decision.

But there are other interests at stake, too. The federal government has a responsibility to screen applicants and take a close look at the people who want to enter the country. Entering the United States is a privilege, and screening the people who want to come to America is a responsibility. The process is vitally important. So the process takes time.

National security interests loom large when someone from another country wants to come into the United States. Not everyone has America's best interests at heart. Even if an applicant is a strong candidate, the Executive Branch still needs to kick the tires on an application, and make sure that everything is in order. The Executive Branch has institutional expertise when it comes to screening applicants, and deciding who deserves a closer look and how fast to move the line. The judiciary, in sharp contrast, does not.

One can only imagine how many countless thousands of people have applied to enter the United States. There are lots of people in line, because so many people want to come to the US of A. If it's not the world's longest line, then it's in the team picture. Processing everyone in line is an extraordinary undertaking, and it takes time.

The line is long. The length of the line reflects the greatness of the country.

The system would not work if federal courts reshuffled the deck to move an applicant to the front of the line. Moving someone ahead in line would not be cost-free, either. Moving someone closer to the front of the line would move other people closer to the back of the line. Accelerating the application of any particular plaintiff would decelerate the applications of countless other people. It's zero sum.

Courts must exercise caution before injecting themselves into areas entrusted to the Executive Branch. The need for caution is especially great when the decision involves the exercise of discretion. That discretion includes an action plan for how best to handle untold hordes of applications. "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

In sum, Zadeh and Yarahmadi have not alleged a basis for the extraordinary remedy of mandamus. Count I is dismissed.

## IV.     APA Claims (Counts II, III & IV)

The next three claims fall under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* *See* Cplt., at ¶¶ 149–92 (Dckt. No. 1). Count II alleges "unlawful withholding and unreasonable delay" in adjudicating Yarahmadi's visa application, in violation of 5 U.S.C. § 706(2). *Id.* at ¶ 157. Counts III and IV ask the Court to compel Defendants to act on Yarahmadi's application, under 5 U.S.C. § 706(1). *Id.* at ¶¶ 165–92.

Section 706(1) authorizes a court to "compel agency action unlawfully withheld" or "unreasonably delayed." *See* 5 U.S.C. § 706(1). Section 706(2) allows a court to set aside an agency action in certain circumstances. *See* 5 U.S.C. § 706(2).

The parties seem to agree that the so-called *TRAC* factors apply to assess whether Yarahmadi has a viable claim under the APA. *See* Defs.' Mem., at 13–15 (Dckt. No. 14); Pls.' Resp., at 14 (Dckt. No. 17). So, the Court will apply those factors.

The *TRAC* factors stem from *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984). In that case, the D.C. Circuit established a six-factor framework for assessing whether an agency has unreasonably delayed action. *TRAC* laid down six guiding principles:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (cleaned up); *see also Zagnoon v. Blinken*, 2023 WL 7279295, at *2 (W.D. Wis. 2023) (employing the *TRAC* factors in a case about a visa application); *Aljabari*, 2022 WL 2073047, at *3 (same).

Defendants march through each of the six factors. *See* Defs.' Mem., at 13–15 (Dckt. No. 14). The Court will do the same.

Before diving into the *TRAC* analysis, the Court offers a note about Plaintiffs' arguments. Zadeh and Yarahmadi do not argue that they can satisfy the *TRAC* factors. Instead, they simply contend that addressing the *TRAC* factors would be premature. *See* Pls.' Resp., at 14–15 (Dckt. No. 17).

11

However, courts in this district have conducted an analysis under *TRAC* in immigration cases at the motion-to-dismiss stage. *See, e.g.*, *Aljabari*, 2022 WL 2073047, at *6; *Orozco*, 2023 WL 4595377, at *3. Indeed, "the weight of authority appears to cut in favor of deciding unreasonable-delay claims at the motion-to-dismiss stage before discovery." *Lee v. Blinken*, 2024 WL 639635, at *4 (D.D.C. 2024) (cleaned up).

From the 35-page complaint and the attached exhibits, the Court has enough information to conduct its *TRAC* analysis now. *See generally* Cplt. (Dckt. No. 1). So, the Court declines Zadeh and Yarahmadi's invitation to kick the can. Onto the *TRAC* factors.

### *Factors I & II – Rule of Reason/Guidance from Congress*

Factors I and II are often analyzed together. *See, e.g.*, *Jahangiri*, 2023 WL 5174305, at *2 (assessing the first two *TRAC* factors together); *Lee*, 2024 WL 639635, at *5 (same).

"The first *TRAC* factor – whether the decision is governed by a rule of reason – is the 'most important.'" *Aljabari*, 2022 WL 2073047, at *3 (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). "The inquiry centers on whether the agency's response time is governed by an identifiable rationale." *Jahangiri*, 2023 WL 5174305, at *2 (cleaned up). "The second *TRAC* factor involves looking at the statutory scheme and deciding whether Congress provided guidance on how much time the procedure should take." *Aljabari*, 2022 WL 2073047, at *4.

Visa applications are adjudicated in the order in which they were filed. *See Jahangiri*, 2023 WL 5174305, at *3. It's a first-in, first-out principle.

Courts – including *this* Court – have generally held that first-in, first-out satisfies the rule of reason. *See Aljabari*, 2022 WL 2073047, at *3 ("First-in, first-out is a rule of reason. There is fairness in requiring everyone to wait their turn."); *see also N-N v. Mayorkas*, 540 F. Supp. 3d 240, 261 (E.D.N.Y. 2021); *Muvvala v. Wolf*, 2020 WL 5748104, at *3 (D.D.C. 2020); *A.C.C.S. v. Nielsen*, 2019 WL 7841860, at *4 (C.D. Cal. 2019).

Zadeh and Yarahmadi do not allege that the State Department sat on its hands and refused to review Yarahmadi's K-1 visa application, while allowing other couples to jump the line. Therefore, the first factor favors Defendants.

The second factor favors Defendants, too, for the reasons explained in the discussion of Count I. Namely, Congress hasn't set in place any firm deadlines for visa application adjudications. Absent a congressional directive, this Court looks to case law. And a review of the case law suggests that a delay of a little over a year is insufficient, by a wide margin. *See Aljabari*, 2022 WL 2073047, at *4 ("All other courts recognize that a one-year delay (if not more) is reasonable, and this Court sees no reason to break from the pack.").

In sum, both the first and second *TRAC* factors tip the scale in Defendants' favor.

*Factors III & V – Human Interests/Personal Harm*

"The third and fifth factors overlap – the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); *see also Whitlock v. U.S. Dep't of Homeland Sec.*, 2022 WL 424983, at *7 (D.D.C. 2022) (noting that factors three and five are "often considered in tandem") (collecting cases).

As discussed above, Zadeh and Yarahmadi alleged that they have suffered emotional harm from their separation. *See* Cplt., at ¶¶ 6, 105, 109, 185 (Dckt. No. 1). They have had to put their plans to start a family on hold. *Id.* at ¶¶ 106, 108. And paying for two separate households, and international flights, has also caused a financial strain. *Id.* at ¶¶ 117–18.

The Court concludes that the third and fifth *TRAC* factors weigh slightly in favor of Zadeh and Yarahmadi. *See, e.g.*, *Jahangiri*, 2023 WL 5174305, at *4 ("The delay in adjudicating Plaintiff's K-1 visa has forced her to endure a prolonged and indefinite separation from her fiancé, which is undeniably significant.") (cleaned up); *Lee*, 2024 WL 639635, at *7 (concluding that a visa delay had affected a couple's health and welfare where they suffered emotional turmoil due to the separation); *Rahimian v. Blinken,* 2023 WL 143644, at *8 (D.D.C. 2023) (concluding that the third and fifth *TRAC* factors tilted in plaintiffs' favor because they were delayed in starting a family).

Still, as Defendants point out, Zadeh and Yarahmadi do not face a unique situation. Other applicants are dealing with like circumstances. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) ("While the Court does not doubt that Palakuru has an interest in prompt adjudication, so too do many others facing similar circumstances. . . . At most, these factors would weigh only slightly in support of finding an unreasonable delay."); *Mohammad*, 548 F. Supp. 3d at 168–69 ("The Court is not unsympathetic to Mohammad's difficulties. But the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications.") (cleaned up). Everyone else is in the same boat.

Other applicants are waiting, too. And Zadeh and Yarahmadi do not give this Court any reason to think that their emotional wellbeing is more important than the wellbeing of other applicants. Lots of people are waiting, and lots of people are putting life on hold while they wait.

Therefore, the Court concludes that the third and fifth *TRAC* factors tilt only slightly in Zadeh and Yarahmadi's favor.

*Factor IV – Prioritization*

The fourth factor is about "the effect granting relief would have on the agency's competing priorities." *See Orozco*, 2023 WL 4595377, at *5. "It directs the Court to consider whether expediting the decision in this case will impact other agency decisions of equal or higher priority." *Aljabari*, 2022 WL 2073047, at *5 (citing *TRAC*, 750 F.2d at 80).

The Seventh Circuit has explained that an applicant does not have the right to jump ahead of others who filed an application beforehand and are also waiting for adjudications of their visa applications. *See Calderon-Ramirez*, 877 F.3d at 275. "With nothing in the record to suggest his wait time has been any more unreasonable than other petitioners waiting in the same line," the Seventh Circuit saw no reason to grant the requested relief. *Id.* at 276.

The Seventh Circuit is not an outlier. Other courts have likewise declined to retool the lineup to put the plaintiff up to bat first. *See, e.g.*, *Lee*, 2024 WL 639635, at *6 ("Consular processing capacity is presently a zero-sum game, so granting [the plaintiffs] relief would necessarily mean additional delays for other applicants – many of whom undoubtedly face hardships of their own.") (cleaned up); *N-N*, 540 F. Supp. 3d at 263 (concluding that the fourth *TRAC* favor "weighs strongly in favor of Defendants here because expediting the delayed action would essentially allow Plaintiffs to 'jump the line,' resulting in the redistribution of agency resources but no agency-wide net gain").

Reshuffling the deck is a zero-sum game. Agencies have limited time and limited resources. Any time spent on Yarahmadi's application is time not spent working on someone else's application. Everyone in line wants a ruling on their application. But someone else would have to wait *longer* if this Court concluded that Zadeh and Yarahmadi should wait *less*.

Zadeh and Yarahmadi have not offered a reason why they deserve preferential treatment over everyone else waiting in line. So, the fourth *TRAC* factor comes out in Defendants' favor.

### *Factor VI – Impropriety*

The final *TRAC* factor is impropriety. Zadeh and Yarahmadi do not allege any bad faith by the government. *Cf.* Cplt. (Dckt. No. 1) (not alleging impropriety); Pls.' Resp., at 13–15 (Dckt. No. 17) (same).

"[A] court can find unreasonable delay, even if the agency isn't engaging in impropriety." *Aljabari*, 2022 WL 2073047, at *6 (citing *TRAC*, 750 F.2d at 80). Some courts conclude that a lack of impropriety favors defendants, while others conclude that a lack of impropriety is neutral. *Id.*

In any event, this Court does not need to pick a side. Doing so would not change the outcome. For now, the Court simply notes that this factor does not tip the scales in Zadeh and Yarahmadi's direction.

\*   \*   \*

Taken as a whole, the six *TRAC* factors heavily tilt in Defendants' favor. The Court therefore concludes that Zadeh and Yarahmadi cannot prevail on their APA claims about an "unreasonable delay" in adjudication of Yarahmadi's visa application.

14

Zadeh and Yarahmadi might have intended Counts II and III to pertain to the "withholding" of a decision, rather than "unreasonable delay." *See* Cplt., at ¶¶ 149–76 (Dckt. No. 1). But the Court's analysis addressed the claims based on the pleading.

As pleaded, both counts are about a failure to timely act. That is, they sound in arguments about unreasonable delay. *See, e.g.*, *id.* at ¶ 155 ("Defendants have failed to adjudicate Plaintiff's application within a *reasonable time* and have instead unlawfully withheld agency action, leaving Plaintiffs in an indefinite limbo.") (Count II) (emphasis added); *id.* at ¶ 168 ("The *timely adjudication of and decision on* a properly filed pending application are not optional.") (Count III) (emphasis added).

Thus, the Court's analysis about unreasonable delay fully addresses all three of Zadeh and Yarahmadi's APA claims. Plaintiffs haven't stated a separate "withholding" claim. *See Lee*, 2024 WL 639635, at *7 (concluding that the plaintiffs had failed to state a distinct withholding claim where the claim sounded in unreasonable delay); *Tate*, 513 F. Supp. 3d at 147 n.6.

Therefore, the Court dismisses Counts II, III, and IV.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss.

Date: May 20, 2024

Steven C. Seeger
United States District Judge

15